## DALY v. GARDNER.

(Second Division. Nome. December 14, 1901.)

### No. 147.

1. DEFAULT—ATTORNEY.

Generally a default judgment will be opened when entered after service through neglect of the attorney. The inattention and neglect of the attorney is the inattention and neglect of the client.

2. SAME—JUDGMENT.

A default will not be set aside when the defendant was personally served with summons and an injunction, which he violated, after a year of absence from the jurisdiction, during which time judgment was entered, execution issued, and the property sold to third parties.

This is an application by the defendant to vacate and set aside a judgment obtained by the plaintiff against the defendant by default, and to permit the defendant to answer upon the merits. Motions of this kind are favorably considered by the court in all proper cases, but there are cases where the court, acting in its sound discretion, will not permit judgments to be vacated to allow the defendant to come in and defend.

The record in this case shows that the complaint was filed September 12, 1900, and that personal service was had upon the defendant, Gardner, on October 6, 1900, in Nome. At the time the summons was served upon him, an injunction was also served upon him to restrain him, among other things, from "selling, disposing, or getting rid in any manner of any gold, gold dust, or money derived in any manner from the working and mining of said claims, either by themselves or others, and to desist and refrain from shipping or sending the .same out of the jurisdiction of this court, or in any manner concealing or putting the same out of your hands." No appearance was thereafter made in the action by the defendant. The default was regularly entered, and the matter was sent to a referee, who took all the testimony in the case, and reported the same to the court on January 8, 1901, upon which report the court entered judgment on that date.

The litigation arises between the plaintiff and defendant over their partnership interests in placer mining claims Nos. 2 and 3 on Elkhorn creek, in the Eldorado mining district, near Golovnin Bay, and the plaintiff was seeking to secure an accounting and settlement of his mining partnership with the defendant in relation to the said mines. After the entry of the judgment in January, an execution was issued on March 12th, upon which the interest of the defendant in the mining claims mentioned was sold on the 23d day of April to one Robert Dunn for the sum of $1,100, which sale was thereafter regularly confirmed by this court. The proceedings in the case were full and complete, and appear in every respect to be regular, and in accordance with the law. On October 5th—just one year after personal service had been made upon him—the defendant, Gardner, filed in this court an application to set aside the judgment so entered on January 8, 1901, and to be permitted to file his answer and con-

test the plaintiff's suit. In his affidavit he alleges that at the time personal service was made upon him on October 6, 1900, he was on the steamer Charles D. Lane, then bound for Seattle; and that before leaving Nome he employed two attorneys, W. E. Crews and J. B. Zimdars, and paid them $250, to look after his interests in said case. He states that his attorneys assured him that they would procure a continuance of his case, and that he might leave the country until the opening of navigation in the next year. He also says that at that time his health was bad, and that it was necessary for him to go outside. He also presents the affidavit of one Dr. J. H. Koons, of Franklin county, Pa., who testifies that in September, 1900, Gardner was suffering from a growth on the right leg, and also from rheumatism and some disease of the kidneys, and that it was necessary for him to go outside for medical treatment. It also appears by the affidavit of Gardner that he returned to Nome on the 20th day of June, 1901, and then learned that neither Crews nor Zimdars had remained in Nome during the winter of 1900–1901, and that neither of them had appeared in this action, and that a default judgment had been entered against him. He presents his answer with his affidavit, generally denying the amount due the plaintiff, but admitting the copartnership, and expressing a willingness to tender the deed which had theretofore not been made to the plaintiff for his half interest in the property.

C. S. Johnson, for plaintiff.

WICKERSHAM, District Judge. It has been decided in a large number of cases that the inattention and neglect of the attorney is the inattention and neglect of the client; that a default will not be opened where the attorney has simply neglected his duty, and allowed a default to be entered against his client, unless some other feature calling more loudly for

the interposition of the equity power of the court presents itself. There are some features of this application that strike the court as peculiar. One of them is the affidavit of Dr. Koons. It seems to have been made in Franklin county, Pa., on the 4th day of May, 1901, prior to the time when Gardner left that state to return to Nome. In his affidavit he makes the statement that he returned to Nome on the 20th day of June, "and to affiant's surprise learned that neither the said Crews nor the said Zimdars had remained in Nome during the winter of 1900–1901, and that the said Crews and the said Zimdars had made no appearance for affiant in the above-entitled suit, but that a default had been taken and entered against affiant in the above-entitled suit, and a judgment issued thereon, and affiant's property sold under execution." The query in the mind of the court is, if he knew nothing of this default judgment, and was surprised to learn of it when he returned in June, for what purpose did he have the affidavit of Dr. Koons made on May 4th, who therein states so many reasons why the default should be set aside. The defendant stands in a very poor attitude to come into this court and ask the equitable interposition of the court to set aside a judgment made almost a year ago, under which third parties have acquired title to real estate, when it appears that he had personal service of the summons, and that he personally violated the injunction of the court in this suit in connection therewith. He treats the process of the court with disrespect on the one hand, and asks for its equitable assistance on the other.

It is admitted by the defendant that he and the plaintiff were partners in the mines in question, and that their respective interests are correctly stated in the complaint. The only contention between the partners is the amount of gold extracted from the claim for which the defendant failed and refused to make any accounting. He now complains of the

finding of the court upon that question. Upon his own showing, one Coulter kept certain books showing the clean-ups from these mines, and it appears in the record that these very books were used for the purpose of determining this question. Instead of giving his aid and assistance to the court in determining the contention, instead of respecting the injunction of the court that was personally served upon him, instead of entering his appearance in this action and defending it, the defendant, having personally notice of the plaintiff's claim, left the country carrying with him whatever gold dust came from this claim, in violation of the injunction, and he cannot now be heard to say that the court did wrong.

Upon a careful examination of this record, I am confident that there is no reason, either in equity or law, why the defendant Gardner should have the judgment vacated and be allowed to defend. He was given personal notice, but contemptuously, and in violation of the injunction of this court, left the country, and declined to come into this court and claim his rights. The court now declines to afford him any relief, and the application to open the default is denied.